### DARCY v. PRESBYTERIAN HOSPITAL IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 11, 1909.)

1. DEAD BODIES (§ 9*)—AUTOPSY BY CORONER'S PHYSICIAN—HOSPITAL'S LIABILITY.

    Section 1773 of the Consolidation Act (Laws 1882, p. 430, c. 410) makes it the coroner's duty, in case of a suspicious or unusual death, to send a physician to view the body or perform an autopsy as may be required. Section 1775 makes it the duty of any citizen aware thereof to report such a death to a coroner, and failure to do so a misdemeanor. Subdivision 2 of section 1776 makes it a misdemeanor to willfully touch, remove, or disturb the body in such a case without a coroner's order. *Held*, that the sole ground on which a hospital could be held liable to the relatives of a decedent for the making of a coroner's autopsy was the fact that its authorities made a false report to a coroner who was thus induced to make an autopsy when none was justified, and where a patient died in a New York hospital and the attending physician was unable to determine the cause of death, and his mother refused consent to an autopsy, the hospital was not liable for merely reporting the death to the coroner, who sent a physician, who assumed entire charge, and uninfluenced by requests or suggestions of the hospital authorities made an autopsy on his own responsibility, and for the making of the autopsy the coroner's physician was solely responsible.

    [Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. § 13; Dec. Dig. § 9.*]

2. DEAD BODIES (§ 9*)—AUTOPSY BY CORONER'S PHYSICIAN—HOSPITAL'S LIABILITY—ADMISSIBILITY OF EVIDENCE.

    On the question of a hospital's liability to the relatives of a decedent for calling in a coroner's physician, who made an autopsy, it may prove the nature of its report to the physician; that it truly stated the conditions surrounding the death and the symptoms that caused it to be unusual or suspicious, justifying the report.

    [Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. § 13; Dec. Dig. § 9.*]

Appeal from Trial Term, New York County.

Action by Jane Darcy against the Presbyterian Hospital in the City of New York. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Robert Thorne, for appellant.
Carlisle Norwood, for respondent.

INGRAHAM, J.   The defendant corporation, incorporated under a special act, maintained in the city of New York a hospital for the relief of the sick and injured.   It is mainly a charitable institution, although it receives compensation for attendance from those who are able to pay.   The medical service is free.   The plaintiff has brought this action against the defendant based upon the act of a coroner's physician of the city of New York in performing an autopsy upon the body of her son, who was a patient in the hospital and died there on the 3d of October, 1906.   The cause of action seems to be based upon what the brief of the learned counsel for the respondent states was a violation of the defendant's express duty and obligation and implied undertaking to deliver the body of John Darcy after his decease to this plaintiff in such a condition as it might be at the time of his decease.

It appears from the evidence that John Darcy, the plaintiff's son, was taken sick prior to the 15th of July, 1906, and on the 24th of September, on the advice of his physician, was removed to the hospital, the plaintiff agreeing to pay the hospital $1 per day.   It also appeared that after his death the physician in charge of the case being unable to determine the cause of his death requested the plaintiff to consent to an autopsy, which she refused to do; subsequent to such refusal the hospital authorities called up the board of health on the telephone, made a statement of the case to the representatives of that board, and was directed by them to notify the coroner's office; that subsequently the coroner's office was called on the telephone and notified of the death; that a coroner's physician subsequently appeared at the hospital, examined the clinical history of the case and the report of the hospital superintendent, decided that an autopsy was necessary, and performed it without any request of the hospital authorities, after which the body of the deceased was delivered to the plaintiff.

This was the plaintiff's case and I think it disclosed no cause of action.   There was no evidence that the hospital authorities, or those for whose acts the corporation was responsible, performed this autopsy, had anything to do with or was responsible for it, except so far as the board of health and the coroner's office was informed of the death of the patient in the hospital.   This certainly imposed no liability upon the corporation.   There was no evidence that a false statement was made to the coroner or to the board of health, or that anything was said or done to induce the public authorities to take charge of the case or perform an autopsy.   The bare fact that the hospital authorities informed the coroner that a death had taken place in the hospital imposes no liability upon the hospital for the acts of the public authorities taken upon their own responsibility as to the subsequent disposition of the remains.

A motion to dismiss having been denied, the superintendent of the hospital testified that Dr. Bovaird, who was the attending physician, had desired an autopsy, and had requested the plaintiff to consent

thereto but she had refused. Dr. Cooke, the house physician, testified that he had charge of the case, but was unable to determine the cause of death; that he telephoned to the board of health and subsequently called up the coroner's office. He was asked what communication he made to these authorities, but his statements were excluded upon the objection of the plaintiff. The court also excluded the statements that were made to the coroner's physician by the hospital authorities after his arrival. The defendant then sought to prove the clinical history of the case. The house physician was then asked whether there was anything unusual in the death of the decedent, to which he said that there was, and was then asked what there was about the death of the decedent which he thought unusual. That was objected to and the objection sustained, to which the defendant excepted. The doctor was then asked whether there was a record of the case of the decedent in the hospital, to which he answered that there was; was asked whether that record was submitted to the coroner's physician, which was objected to by the plaintiff, and the objection sustained. The coroner's physician was then called as a witness, and said that he came to the hospital in consequence of a message received by him from the coroner's office. He was asked as to his duties as a coroner's physician in connection with the investigation of causes of death and the performance of autopsies when a case was assigned to him. That was objected to as incompetent, and the objection sustained. He was then asked after he received the notice from the coroner's office what his duties were in regard to it, which was objected to, and the objection sustained. He was then asked upon the assignment of a case to him from the coroner's office whether it was his duty to ascertain and report to the coroner the cause of death, which was objected to, and the objection sustained. He was then asked under what conditions he would proceed to make an autopsy. That was objected to, and the objection sustained. He was then asked whether it was his duty to report to the coroner the cause of death, which was objected to, and the objection sustained. Other questions were then asked the witness as to his duty in relation to the making of an autopsy and a report to the coroner as to the cause of death, which were all objected to, and the objections sustained. On cross-examination he testified that he did not know before the autopsy was performed that permission had been asked of relatives of the deceased to make an autopsy; that it would not have made any difference in a case that was submitted to him with a clinical history that contained data that rendered such a case suspicious of arsenic; that in a case of that kind an autopsy is performed to ascertain whether the deceased was poisoned by arsenic or not. Counsel for the defendant then asked the witness if he knew of any law to which he could refer that would justify him in performing an autopsy in the case of John Darcy, and was asked to state the law, which was objected to, and objection sustained. He was then asked to point out in the report made by the Presbyterian Hospital anything to indicate that John Darcy died in a suspicious or unusual manner, to which he said, "Yes; the symptoms were of arsenical poison;" but that, on the objection of the plaintiff, was stricken out. He was then asked what he meant by

symptoms, and proceeded to state the symptoms of arsenical poison which appeared in the report to the coroner by the hospital authorities, but this was objected to, and the objection to the question sustained. He was then asked whether,· from the information that the coroner's office then and there received, the clinical history of the case and the report to the coroner, he was able to have an opinion as to the cause of death. This was objected to, the objection sustained. He was then asked whether it was necessary, in order that he should form an opinion to report to the coroner, to make an autopsy. That was objected to and excluded, and the defendant excepted.

The sole ground upon which there could be any liability was the fact that the hospital authorities had made a false report to the coroner, and thus induced him to make an autopsy when none was justified by the symptoms of the patient. The coroner was a public officer in whom was reposed the duty of investigating the cause of death where any person should die in a suspicious or unusual manner, and in such a case it was his duty to require one of the coroner's physicians to view the body of the deceased or perform an autopsy thereon as may be required. Section 1773 of the Consolidation Act, c. 410, p. 430, of the Laws of 1882. And by section 1775 of that act it was made the duty of any citizen who should become aware of the death of any person who died in a suspicious or unusual manner to report the death forthwith to one of the coroners, and making any person who willfully neglected to report such death to the coroner guilty of a misdemeanor. By subdivision 2 of section 1776 it is provided that any person who shall willfully touch, remove, or disturb the person of any one who shall have died in a suspicious or unusual manner, without an order from a coroner, shall be guilty of a misdemeanor. It is quite clear that the mere report by an attending physician at a hospital to the coroner's office of the case of a person dying in a hospital, so that the coroner or his physicians shall make the necessary and proper examination, imposes no liability upon the hospital. It is merely a notice to the public authorities upon whom the statute imposes a duty to investigate the cause of death, and places upon those in such authority the responsibility for the proper investigation of such a case. The evidence is uncontradicted that upon the arrival of the ·coroner's physician he assumed entire charge and made an autopsy on his own responsibility, uninfluenced by any request or suggestion of the hospital authorities. For the making of that autopsy the coroner's physician was solely responsible. If, however, there could be any question of the liability of the defendant, it was clearly authorized to prove the nature of the report of the hospital authorities to the coroner's physician; that it truly stated the conditions surrounding the death of the decedent, and the symptoms that caused the death to be an unusual or suspicious one which justified them in reporting the case to the coroner's office.

It follows that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.